UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL KATILAS,** *individually, and on behalf of all others similarly situated,*<br><br>Plaintiff<br><br>v.<br><br>**HEARING LIFE USA, INC.**<br><br>Defendants. | Civil Action No. 2:24-cv-5969<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff, Michael Katilas ("Plaintiff" or "Mr. Katilas"), on behalf of himself and all others similarly situated, by and through his undersigned attorneys, submits his Class Complaint against Defendant HEARINGLIFE USA, INC. ("Hearing Life"). In support thereof, Plaintiff states as follows:

### NATURE OF THE CASE

1. Plaintiff brings this class action individually and on behalf of all others similarly situated, seeking damages and any other available legal or equitable remedies under the Telephone Consumer Protection Act ("TCPA") resulting from the unlawful actions of the Defendant.

2. In violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* and the TCPA's corresponding regulations, 47 C.F.R. § 64.1200 *et seq.*, multiple telemarketing communications, soliciting goods or services, were initiated by the Defendant or on their behalf, to Plaintiff and the putative class members' residential telephone numbers, while registered on the National Do Not Call Registry.

3. Specifically, Defendant (or an entity on Defendant's behalf) initiated at least

1

numerous occassions in 2024.

## BACKGROUND ON THE TCPA

4.      In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' privacy rights- specifically, the right to be left alone from unwanted telemarketing calls.

5.      A leading sponsor of the TCPA described telemarketing "robocalls" as the "scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

6.      The TCPA, through the accompanying FCC regulations, 47 C.F.R. § 64.1200(c) *et seq.*, affords special protections for "residential subscribers" who register their phone numbers on the National Do Not Call Registry.

7.      Since 2003, persons who register cell phone numbers on the Do Not Call registry have been considered to be "residential subscribers" for the purpose of 227(c)(5) and the Do Not Call registry. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'")

8.      47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) provide that each person who receives more than one call within a 12-month period, where that called party did not provide express written consent upon a clear and conspicuous disclosure from the telemarketer, after the phone number was registered on the National Do Not Call Registry for more than 31 days is entitled to recover $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

9.      Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints

received by the [Federal Communications] Commission." Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

10. In fact, in 2021 alone, there were over ***five million complaints*** from Americans to the FTC about unwanted telemarketing calls. Federal Trade Comm'n, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry (*Jan. 5, 2022) *available* at: https://www.ftc.gov/news-events/news/press-releases2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry.

11. The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

**JURISDICTION AND VENUE**

12. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. See *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

13. Plaintiff is a former resident of Southeastern Pennsylvania and therefore owns a "484" area code phone.

14. Plaintiff received multiple phone calls from the Defendant Hearing Life on that area code "484" phone number, which is associated with Pennsylvania and has substantial geographic overlap with this District.

15. Defendant knowingly and purposefully availed itself to the Commonwealth of Pennsylvania by placing calls to Plaintiff's 484 area code cell phone.[1]

16. Furthermore, Defendant placed calls many calls from its "267" number, associated with Pennsylvania.

17. Accordingly, upon information and belief, some of the calls were placed from Pennsylvania.

18. Defendant regularly conducts business and has multiple physical footprints within the Commonwealth of Pennsylvania and within this District.

19. Accordingly, specific personal jurisdiction exists, and venue is proper pursuant to 28 U.S.C. §1391(b)(2).

## PARTIES

20. Plaintiff, Michael Katilas is currently a citizen and resident of Binghamton, New York.

---

[1] *See e.g., McDermet v. Porch.com, Inc.*, No. 19-10284-RGS, 2019 U.S. Dist. LEXIS 64615, at *5-6 (D. Mass. Apr. 16, 2019) (An allegation that the Defendant or its agents called the Plaintiff's number that had a [State] area code is sufficient to establish that the Defendant purposefully availed themselves of the privilege of doing business in the [State].); *Abramson v. Caribbean Cruise Line, Inc.*, 2014 U.S. Dist. LEXIS 88336, 2014 WL 2938626, at *9 (W.D. Pa. June 30, 2014) (By initiating a call to a number with a [State] area code, it can be said that the Defendant expressly aimed their conduct at [State] because the number was associated with the [State].); *Luna v. Shac, LLC*, 2014 U.S. Dist. LEXIS 96847, 2014 WL 3421514, at *3 (N.D. Cal. July 14, 2014) (Where Defendant intentionally sent text messages directly to cell phones with [State] based area codes, which conduct allegedly violated the TCPA and gave rise to this action, Defendant expressly aimed its conduct at [State].); *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 62 (1st Cir. 2002) ("Even in cases where the defendant was not physically present in the forum, where the defendant initiated the transaction by mailing or calling the plaintiff in the forum and when the defendant contemplated that the plaintiff would render services in the forum . . . many courts have found jurisdiction.").

21. For many years, and until only recently, Mr. Katilas was a citizen and resident of the Commonwealth of Pennsylvania.

22. Plaintiff is a "person" as that term is defined by 47 U.S.C. §153(39).

23. Defendant Hearing Life is a business entity with a headquarters or principal address located at 580 Howard Ave., Somerset, NJ 08873.

24. The nature of the Defendant's business involves sales and services associated with hearing aids.

25. According to Hearing Life's website[2], under the heading "Hearing aids centers in Pennsylvania - Hearinglife PA," Defendant lists more than a dozen clinics within Commonwealth of Pennsylvania.

26. Hearing Life is a "person" as that term is defined by 47 U.S.C. §153(39).

27. Hearing Life acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

28. The nature of the Defendant's business involves the provision of services such as conducting hearing assessments, the sale of goods such as hearing aids, and the solicitation thereof.

29. The Defendant maintains a number of clinics across the United States, at which hearing assessments are performed. The Defendant's website[3] states: "The purpose of this hearing assessment and/or demonstration is for hearing wellness and to determine if the consumer may benefit from using hearing aids, which may include selling and fitting hearing aids."

---

[2] https://www.hearinglife.com/hearing-aids-centers/all-clinics
[3] https://www.hearinglife.com/why-hearinglife

30. At all times relevant hereto, Mr. Katilas is and was the customary user of a residential cellular telephone, the number for which was 484-XXX-5615 (the "5615 Number").

31. Plaintiff's subject cell phone number was registered to Plaintiff as an individual and not to a business, and Plaintiff used the subject cell phone number primarily for residential purposes, including personal communication between family and friends, ordering food, and other common domestic consumer uses.

32. Plaintiff received multiple calls from various phone numbers, all from or on behalf of Hearing Life, and all while the phone number was registered on the NDNCR. The dates and times of those calls are described in greater detail below.

33. Between May of 2024 and the time of filing this Complaint, Mr. Katilas received greater than thirty (30) phone calls from Hearing Life on his 5615 Number.

34. Eighteen (18) of these calls were identified as "HEARINGLIFE" by the Plaintiff's Caller ID system.

35. Annoyed by the persistent and ceaseless calling from Hearing Life, Mr. Katilas answered one of these calls on July 15, 2024.

36. During the phone call on July 15, 2024, the calling party introduced himself as "Julian," announced he was "calling from Hearing Life," and asked whether Mr. Katilas was interested in "purchasing a hearing aid." Mr. Katilas responded that he was "not interested" and to please "stop calling."

37. In addition to the directive to stop calling, Plaintiff registered the 5615 Number on the National Do Not Call Registry ("NDNCR") on September 5, 2024.

6

38. Despite the directive to stop calling and his registration of his number on the NDNCR, Hearing Life did not place Mr. Katilas on any internal do not call list, and willfully continued to call Mr. Katilas after and despite his clear instruction.

39. Following at least seven (7) of these many phone calls, Hearing Life left Mr. Katilas a voicemail. In each voicemail, the calling party identified themselves as "Hearing Life."

40. During some of these calls, Hearing Life inquired whether Mr. Katilas was "still" interested in purchasing hearing aids (Plaintiff never requested or needed hearing aids). And during other calls, Hearing Life asked Mr. Katilas whether he was interested in scheduling a visit to a local clinic for a hearing test or examination.

41. Plaintiff found the telemarketing communications received to be annoying, irritating, and disruptive.

42. These communications were not made for "emergency purposes," but rather for solicitation purposes.

43. Plaintiff did not provide express written consent or any consent for those solicitations.

44. Plaintiff did not have any established business relationship with the Defendant prior to the telemarketing campaign.

45. At the time this Complaint was filed, Plaintiff has received <u>Thirty-Six</u> (36) communications initiated by or on behalf of the Defendant. Those calls were made to Plaintiff on the following instances:

| Date | Time | Calling number | Status (duration) | Caller ID reference | "Stop" ? |
|---|---|---|---|---|---|
| May 25, 2024 | 9:20 AM | (267) 223-0887 | Missed | HEARINGLIFE | |
| May 28, 2024 | 10:52 AM | (267) 223-0887 | Declined | HEARINGLIFE | |

| May 28, 2024 | 12:05 PM | (607) 786-5130 | Missed; voicemail (0:18) | Endicott, NY | |
| May 29, 2024 | 3:10 PM | (267) 223-0790 | Missed | HEARINGLIFE | |
| May 29, 2024 | 3:10 PM | (267) 223-0837 | Missed | HEARINGLIFE | |
| May 29, 2024 | 5:14 PM | (267) 223-0857 | Missed; voicemail (0:37) | Philadelphia, PA | |
| May 30, 2024 | 5:44 PM | (267) 223-0857 | Declined; voicemail (0:30) | Philadelphia, PA | |
| May 30, 2024 | 11:27 AM | (607) 786-5130 | Declined; voicemail (0:09) | Endicott, NY | |
| June 5, 2024 | 10:41 AM | (267) 223-0837 | Missed; voicemail (0:37) | HEARINGLIFE | |
| June 6, 2024 | 5:33 PM | (267) 223-0790 | Missed; voicemail (1:00) | HEARINGLIFE | |
| June 6, 2024 | 5:33 PM | (267) 223-0837 | Missed; voicemail (1:00) | HEARINGLIFE | |
| June 11, 2024 | 3:18 PM | (516) 218-1017 | Declined | Healthcare - Woodmere, NY | |
| June 24, 2024 | 3:43 PM | (516) 218-1017 | Missed | HEARINGLIFE | |
| June 26, 2024 | 8:53 AM | (332) 219-2888 | Missed | HEARINGLIFE | |
| June 27, 2024 | 10:16 AM | (332) 219-2888 | Declined | HEARINGLIFE | |
| June 28, 2024 | 11:59 AM | (332) 219-2888 | Declined | HEARINGLIFE | |
| July 5, 2024 | 10:15 AM | (332) 219-2888 | Missed | HEARINGLIFE | |
| July 8, 2024 | 10:35 AM | (332) 219-2888 | Missed | HEARINGLIFE | |
| July 8, 2024 | 1:06 PM | (516) 218-1017 | Missed | HEARINGLIFE | |
| July 10, 2024 | 1:45 PM | (516) 218-1017 | Missed | HEARINGLIFE | |
| July 11, 2024 | 2:38 PM | (516) 218-1017 | Missed | HEARINGLIFE | |
| July 12, 2024 | 3:47 PM | (516) 218-1017 | Declined | HEARINGLIFE | |
| July 15, 2024 | 10:28 AM | (332) 219-2888 | Answered (0:27) | HEARINGLIFE | YES |
| August 15, 2024 | 8:36 AM | (347) 670-1669 | missed | Healthcare - Jackson Heights, NY | |
| August 15, 2024 | 8:36 AM | (347) 690-4398 | missed | Healthcare - Flushing, NY | |

8

| August 19, 2024 | 10:34 AM | (347) 670-1669 | Answered (0:10) | Healthcare - Jackson Heights, NY | YES |
| September 18, 2024 | 11:48 AM | (347) 670-1669 | missed | Healthcare - Jackson Heights, NY | |
| September 18, 2024 | 11:48 AM | (347) 690-4398 | missed | Healthcare - Flushing, NY | |
| September 23, 2024 | 12:26 PM | (347) 670-1669 | Answered (0:08) | Healthcare - Jackson Heights, NY | YES |
| September 23, 2024 | 12:26 PM | (347) 690-4398 | Answered (0:10) | Healthcare - Flushing, NY | YES |
| September 25, 2024 | 4:27 PM | (347) 670-1669 | Answered (0:20) | Healthcare - Jackson Heights, NY | YES |
| September 25, 2024 | 4:27 PM | (347) 690-4398 | missed | Healthcare - Flushing, NY | |
| September 30, 2024 | 11:50 AM | (347) 670-1669 | Answered (0:21) | Healthcare - Jackson Heights, NY | YES |
| October 31, 2024 | 9:08 AM | (347) 670-1669 | Answered (0:20) | HearingLife | YES |
| October 31, 2024 | 9:08 AM | (347) 690-4398 | Answered (0:08) | HearingLife | YES |
| November 7, 2024 | 9:17 AM | (347) 670-1669 | Answered (0:18) | HearingLife | YES |

46. As a result of the foregoing, Plaintiff experienced frustration, annoyance, irritation and a sense that his privacy has been invaded by Defendant.

47. The foregoing acts or omissions were in violation of the TCPA.

**Direct and Vicarious Liability**

48. Without having had the benefit of discovery to show otherwise, Plaintiff alleges Defendant is directly liable for the unsolicited communications at issue because they were placed or made directly by the Defendant.

49. Alternatively, if discovery reveals that some or all of the communications were made by third-party(ies) on behalf of the Defendant, then the Defendant is vicariously liable for those communications.

50. Plainly, the TCPA statute expressly permits liability for violative calls made "by or on behalf of the same entity". 47 USC § 227(c)(5).

51. On May 9, 2013, the FCC determined that contracting with other entities to perform the telemarketing activities was not a basis for avoiding liability, as written within a Declaratory Ruling which held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 FCC Rcd 6574 at 6588 (F.C.C. May 9, 2013) (internal citations omitted).

52. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, and rejected the assertion that a seller's liability requires a finding of formal actual agency or immediate direction and control over third parties who place a telemarketing call. *Id.*, at 6587 n. 107.

53. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.,* at 6593.

54. Plaintiff sensibly assumed the telemarketing communications received were from or on behalf of the Defendant because the calling party announced they were calling from [or on behalf of] "Hearing Life."

55. Defendant may have hired, encouraged, permitted, or enjoyed the benefits of mass telemarketing by third-party telemarketers that are currently unknown to Plaintiff and only known to the Defendant.

56. If so, Defendant's third-party telemarketers had actual and/or apparent authority to act on their behalf.

57. And if so, Defendant may have ratified the violations of the TCPA by its agents by accepting leads and deriving profit from sales by unlawful telemarketing calls.

58. Defendant may have acted as a principal to telemarketing agent(s) whose identity or identities are unknown at this time.

59. Defendant is not permitted under the law to outsource or contract its way out of liability by directing and benefitting from its agents' TCPA violations.

60. For the counts identified below, to the extent the Defendant initiated one or more unlawful communications directly, then the Defendant is directly liable for each violative call.

61. Alternatively, for the counts identified below, to the extent any call was made by a third-party agent or entity acting on behalf of the Defendant, then the Defendant is vicariously liable, for encouraging or benefitting from the violative conduct of such an agent or entity.

## CLASS ALLEGATIONS

62. Plaintiff brings this claim on behalf of a class, pursuant to Federal Rule of Civil Procedure 23.

63. Plaintiff seeks to represent the following class:

**Internal Do-Not-Call Registry (IDNC) Class:** All persons in the United States who received two or more telemarketing calls to their cellular or residential telephone numbers within any 12-month period by or on behalf of Hearing Life, from four years prior to the date of this complaint through the date the Court certifies the class, during which time Hearing Life had not instituted or maintained the procedures or minimum standards required under 47 C.F.R. § 64.1200(d).

**Do-Not-Call Registry (DNC) Class:** All persons in the United States where: (1) the person's telephone number was registered on the National Do-Not-Call Registry for 31 or more days; (2) the person's number was registered to an individual rather than a business; (3) the person received two or more calls were on behalf of the Hearing Life within twelve months; and (4) those calls were for the purpose of soliciting Hearing Life products and/or services, from four years prior to the filing of this Complaint through the date a class is certified.

64. Plaintiff reserves the right to amend or modify the class definitions consistent with the record.

65. The putative class members' identities are readily ascertainable from each Defendant's records or records within each Defendant's control.

66. Plaintiff's claims are typical of the class members, as all are based on the same facts and legal theories.

67. Plaintiff will fairly and adequately protect the interests of the class defined in this complaint. The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor his attorneys have any interests which might cause them not to vigorously pursue this action.

68. This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules Civil Procedure because there is a well-defined community interest in the litigation.

69. Class members are so numerous and the individual joinder of all class members is impracticable. There are no likely difficulties to be encountered in managing this case as a class action.

70. Common questions of law and fact exist as to all class members and predominate over questions affecting only individual class members. Common legal and factual questions include, but are not limited to the following:

   a. Whether the Defendants, or someone acting on their behalf, placed solicitation calls to cell phones or landline phones of Plaintiff and the putative class members without obtaining the recipients' prior express written consent;

   b. Whether the Defendants' conduct violates 47 U.S.C. §§ 227(c) and the corresponding rules and regulations implementing the TCPA; and; and

   c. Whether Plaintiff and the putative class members are entitled to increased damages for each violation based on the willfulness of the Defendants' conduct.

71. Plaintiff and the putative class members have claims arising out of Defendants' uniform course of conduct, namely improperly placing calls to the Plaintiff and the putative class members.

72. Plaintiff will fairly and adequately protect the interests of the class members and Plaintiff has no interests that are averse to the absent class members. Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiff nor his counsel have any interests which might cause them not to vigorously pursue this class action lawsuit.

73. The class action mechanism is superior to other available means for the fair and efficient adjudication of this case. Each individual class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary

to establish each Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent and contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of each Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

74. This District is an appropriate forum in which to adjudicate this dispute.

75. Based on discovery and further investigation, Plaintiff may, in addition to moving for class certification, modify definitions of the class, class claims, and the class period, and/or seek class certification only as to particular issues as permitted under Rule 23. Such modified definitions may be more expansive to include consumers excluded from the foregoing definitions.

### COUNT I
### DEFENDANT VIOLATED 47 U.S.C. § 227(c)(5) AND 47 C.F.R. § 64.1200(c)

76. Plaintiff incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

77. Defendant made, or had made on its behalf, telephone calls constituting telephone solicitations to Plaintiff and the putative class members.

78. Plaintiff and the putative class members' telephone numbers were registered on the NDNCR at the time of the calls.

79. Plaintiff and the putative class members each received two or more such calls in a 12-month period.

80. Accordingly, Defendant violated the TCPA, including but not limited to, 47 U.S.C. §§ 227(c)(5) and the TCPA's corresponding regulations.

81. Defendant knew or should have known that Plaintiff and the putative class members had their numbers registered on the Do Not Call Registry.

82. Plaintiff and the putative class members are entitled to an award of $500.00 in statutory damages for each call placed by the Defendant.

83. Plaintiff and the putative class members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

## COUNT II
## **DEFENDANTS VIOLATED 47 U.S.C. § 227(c)(5) AND 47 C.F.R. § 64.1200(d)**

123. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

124. Plaintiff brings this Count individually and on behalf of all others similarly situated.

125. Section 227(c) of the TCPA requires the FCC to enact regulations to protect residential telephone subscribers' privacy rights. The TCPA provides a private right of action for failing to maintain and/or provide internal do-not-call policies. 47 U.S.C. § 227(c)(5).

126. Through those powers delegated by Congress, the FCC promulgated regulations including CFR 64.1200 which provides in relevant part:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, upon demand, for maintaining a do-not-call list.

> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made [and] must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. . . .
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

47 C.F.R. § 64.1200(d), (e).

127. Defendants and/or their agents violated 47 C.F.R. § 64.1200(d)(3) by making telemarketing calls while they failed to honor consumer requests not to receive calls from or on behalf of Defendants, and/or did not record such requests. Even after Plaintiff clearly expressed his desire not to receive any more telephone calls from Defendants, Defendants made two or more calls to Plaintiff, in order to make further solicitations, as described above. Defendants continue to make telemarketing calls while they fail to honor consumer requests not to receive calls from or on behalf of Defendants.

128. Defendants and/or their agents violated 47 C.F.R. § 64.1200(d)(1) by making telemarketing calls while they did not have a written policy for maintaining a do-not-call list, and/or such policy was not available upon demand. Defendants continue to make telemarketing calls when they either do not have a written policy for maintaining a do-not-call list, or do not provide it on demand.

16

129. On information and belief, and in addition or in the alternative, Defendants and/or their agents violated 47 C.F.R. § 64.1200(d)(2) by making telemarketing calls while they had failed to train their personnel in the existence and use of their do-not-call list. Plaintiff alleges various violations of 47 C.F.R. § 64.1200(d) above. To the extent Defendants claim they instituted and maintained procedures and minimum standards prescribed by 47 C.F.R. § 64.1200(d), but that their personnel made a mistake implementing their do-not-call list, Defendants failed to adequately train their personnel.

130. Defendants and/or their agents violated 47 C.F.R. § 64.1200(d)(4) by making telephone calls for telemarketing purposes which concealed the name of the individual caller, Defendants' names, and a telephone number at which Defendants could be contacted. Specifically, Defendants' spoofed the outgoing telephone numbers used to call IDNC Class members, and/or their telemarketers fail to identify Defendants until after the telemarketer assesses the call recipients' interest in Defendants' solicitations.

131. Defendants violated 47 C.F.R. § 64.1200(d) by initiating two or more telephone solicitations to wireless and wireline residential telephone subscribers such as Plaintiff and the other IDNC Class members while failing to institute or maintain procedures and minimum standards required under 47 C.F.R. § 64.1200(d).

132. Defendants violated Plaintiffs rights under § 227(c) and CFR § 64.1200(d) through the aforementioned acts and omissions.

133. Defendants' violations were knowing and willful because they knew they had failed to institute or maintain procedures and minimum standards required under 47 C.F.R. § 64.1200(d) in the manner alleged above.

134. The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, recklessly, willfully and absent any legal justification or excuse.

135. Plaintiff and IDNC Class members are entitled to damages of $500.00 per violation for each call placed and text sent by Defendants and up to $1,500.00 per violation if the Court finds Defendants willfully violated the TCPA.

136. Plaintiff, on behalf of himself, and on behalf of the other IDNC Class members, seeks injunctive and equitable relief under 47 U.S.C. § 227(c)(5) against Defendants to stop their violations of the TCPA.

137. Plaintiff brings this action as a private attorney general, and to vindicate and enforce an important right affecting the public interest. Plaintiff and the IDNC Class are therefore entitled to an award of attorneys' fees under Code of Civil Procedure section 1021.5 for bringing this action.

### **Prayer for Judgment**

WHEREFORE, Plaintiff, Michael Katilas, individually, and or behalf of all others similarly situated, requests the Court grant the following relief:

a. Enter an order against Defendant pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Plaintiff as the class representative and appointing his counsel as Class Counsel;

b. Enter a judgment in favor of Plaintiff and the IDNC Class that enjoins Defendants from violating the TCPA's regulations in the manner and/or using the means as alleged above, consistent with proof;

c. Enter judgment in favor of Plaintiff and the IDNC Classes for all damages available under the TCPA, including actual, statutory and punitive damages per violation of 47 U.S.C. § 227(c), consistent with proof;

d. Award and require the Defendants to pay Plaintiff and the class all reasonable attorneys' fees, witness fees, expenses of class notice and administration, court costs and other litigation costs of this action incurred by Plaintiff available under the TCPA; and

e. Award Plaintiff and the class such further and other relief the Court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

PLEASE TAKE NOTICE that Plaintiff, Michael Katilas, demands a jury trial in this case.

Dated: November 7, 2024

Respectfully Submitted,

KIMMEL & SILVERMAN P.C.

Jacob U. Ginsburg, Esq.
Pennsylvania ID: 311908
Direct: (267) 468-5374
jginsburg@creditlaw.com

/s/ *Jordan C. Kingston*

Jordan C. Kingston
Pennsylvania ID: 335216
Direct: (267) 468-7807
jkingston@creditlaw.com
30 E. Butler Ave.
Ambler, PA 19002
Phone: (215) 540-8888
Facsimile: (877) 788-2864
teamkimmel@creditlaw.com
*Attorneys for Plaintiff*